UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA ERLER, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-00931-JCH |
| | ) | |
| GRAHAM PACKAGING COMPANY L.P., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendant District 9, International Association of Machinists and Aerospace Workers's ("Union") Motion for Summary Judgment (ECF No. 50), and Defendant Graham Packaging Company, L.P.'s ("Graham") Motion for Summary Judgment (ECF No. 55). Both motions have been fully briefed and are ready for disposition.

## BACKGROUND

The following facts are essentially undisputed. Plaintiffs were employees at Graham's facility in Berkeley, Missouri. At all relevant times, Plaintiffs were members of the collective bargaining unit represented by the Union. (ECF No. 1, Compl. ¶¶ 1-11.) In 2012, Graham and the Union entered into a 2012-2015 Collective Bargaining Agreement (hereinafter, the "CBA"). (ECF No. 1.2, Compl. Ex. 2.) As relevant, the CBA provided that Graham could lay employees off due to lack of work, and that employees on layoff could be recalled. *Id.* at 7-9. The CBA also provided that "[t]he seniority and employment status of an employee shall terminate," if, among other reasons, "[t]he employee is not in active employment with [Graham] for a continuous twelve-month period." *Id.* at 6. Article 23 of the CBA, entitled "Plant Closing," provided:

1

> If for any reason this plant should close, each employee will receive one (1) week of pay (40 hours) at their base rate for each year of service, plus one (1) week for a partial year. This severance payment will be made as pay continuation. Each employee shall also be covered under the health insurance plan to the end of the month in which their severance ends and will require the normal employee weekly contribution.

*Id.* at 17. Article 25, entitled "Sole Agreement," provided, "This Agreement may not be altered or amended in any way except by the express written consent of the parties hereto." *Id.*

Plaintiffs were laid off on various dates between November 2012 and July 2013. In early October 2013, Graham announced that it was closing the Berkeley facility. (ECF No. 52, Union SUMF ¶¶ 2, 11.) On October 3, 2013, representatives of Graham and of the Union met to address the effects of the plant closure. According to Ann Ballesteros, a Union Business Representative who attended the October 3 meeting, Graham's representatives made it clear that severance pay would not be provided to those on layoff, unless they were recalled. (ECF No. 14.1, Ballesteros Aff. ¶¶ 1, 11.) At the conclusion of the meeting, the parties executed a written Severance Agreement (hereinafter, the "SA"), which was signed by representatives of Graham and of the Union, and which covered a variety of topics including severance pay, medical and dental benefits, vacation pay, and safety incentives. *Id.* ¶ 12. Regarding severance pay, the SA provided:

> [Graham] will apply a severance pay formula providing for forty (40) hours per year of credited service at the employees regular base wage rate. (Employees moved to a lower position due to staffing changes or layoff, will be paid their severance at the rate of the position they held as of the date of this agreement.) This amount will be made as a pay continuation or lump sum payment on the week following the employees' final paycheck.

(ECF No. 14.4, Ballesteros Aff. Ex. 3.) The SA further provided that "Employees laid off as of October 3rd that may be asked to accept recall shall be eligible for severance under this agreement provided they work until the company releases them." *Id.* According to Ballesteros,

"it was clear under the [SA] that laid off employees who were not recalled would not be entitled to severance pay." (Ballesteros Aff. ¶ 12.)

On October 28, 2013, Plaintiffs and other employees who were on layoff, and who therefore would not be entitled to severance pay, filed a grievance, which was drafted by Ballesteros. (Union SUMF ¶ 13.) The grievance stated: "Company is denying employees who are laid off with recall the benefit as stated in Article 23 of the Collective Bargaining Agreement. 'Severance due to plant closing.'" (ECF No. 14.5, Ballesteros Aff. Ex. 4.) On November 12, 2013, during a third-step grievance meeting, the fact that the SA excluded employees who were on layoff from receiving severance benefits was discussed. (Union SUMF ¶ 15; Ballesteros Aff. ¶¶ 17-18.) In a November 29, 2013 letter addressed to Ballesteros, Graham denied the grievance, stating in part that Graham and the Union had reached a severance agreement, and that "[d]uring [their] discussions it was determined only those employees that were actively working as of the date of the announcement…would be eligible for severance benefits." (ECF No. 14.6, Ballesteros Aff. Ex. 5.)

The Union thereafter utilized a panel of Business Representatives to review the grievance. Following a December 2013 hearing, the panel issued a decision, which it conveyed in a December 16, 2013 letter addressed to Ballesteros. The letter stated that the panel had reviewed the facts and evidence, "including but not limited to the [CBA's] language regarding the eligibility of severance pay to laid off members **(Article 7 'Seniority', Section 14h, which states that an employee is not an active employee while in layoff status, and Article 12 [sic] 'Plant Closing' referring to pay continuation based on active employees)**," and that the panel found the grievance "lacked merit to proceed to the next step of the grievance procedure." The

3

next step would have been arbitration. (Union SUMF ¶ 19; Ballesteros Aff. ¶¶ 21-22; ECF No. 14.7, Ballesteros Aff. Ex. 6 (emphasis original).)

In May 2014, Plaintiffs filed a complaint in federal court under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging that Graham had breached the terms of the CBA with the Union regarding severance pay, and that the Union had breached its duty of fair representation. (Compl. ¶¶ 13-14, 42-53.) In July 2014, the Union moved for dismissal or, in the alternative, for summary judgment, and Graham moved separately for dismissal. (ECF Nos. 14, 19.) This Court denied Defendants' motions (ECF No. 34), and as mentioned above, Defendants have now moved for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The substantive law determines which facts are material, and only disputes over "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, the Court must view the facts in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party discharges this burden, the nonmoving party "must set forth specific facts demonstrating that there is a dispute as to a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotations omitted). "[T]he party opposing summary judgment may not rest on the allegations in its pleadings; it must set forth specific facts showing that there is a genuine issue for trial." *United*

*of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir 2006) (internal quotations omitted). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## DISCUSSION

Section 301 confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185; *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 561-62 (1976). To prevail in a Section 301 hybrid action against a union and an employer, a plaintiff "must prove both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement." *Scott v. United Auto.*, 242 F.3d 837, 839 (8th Cir. 2001). In other words, an employee cannot recover against either party unless the employee proves his or her case against both parties. *Id.*

A union breaches its duty of fair representation when the union's conduct is "'arbitrary, discriminatory, or in bad faith.'" *Smith v. United Parcel Serv., Inc.*, 96 F.3d 1066, 1068 (8th Cir. 1996) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). "Mere negligence, poor judgment, or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation." *Id.* (internal quotations omitted). Where a union has acted in good faith, the union's action or inaction does not violate the duty of fair representation unless "the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Id.* at 1068-1069 (internal quotations omitted). To show bad faith, a plaintiff must offer "evidence of fraud, deceitful action or dishonest conduct." *Id.* at 1069 (internal quotations omitted).

5

Federal common law governs the construction of a collective bargaining agreement. *Miner v. Local 373*, 513 F.3d 854, 861 (8th Cir. 2008) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957)). Where a collective bargaining agreement is unambiguous on its face, the interpretation of its express language constitutes a question of law for the court to decide. *See Barrett v. Safeway Stores, Inc.*, 538 F.2d 1311, 1313 (8th Cir. 1976) (per curiam). "To prove breach of a collective bargaining agreement, a plaintiff must show 1) the defendant had a contractual obligation; 2) the defendant breached that obligation; and 3) the damages sought by the plaintiff foreseeably flowed from the breach." *Brown v. Town & Country Masonry & Tuckpointing, LLC*, No. 4:12-CV-1227-DNN, 2012 WL 6013215, at *3 (E.D. Mo. Dec. 3, 2012) (internal quotations omitted).

Here, the parties spend significant portions of their summary judgment filings disputing whether Plaintiffs were entitled to severance benefits under Article 23 of the CBA, whether Graham breached the CBA, and whether the Union breached its duty of fair representation by failing to proceed to arbitration with Plaintiffs' grievance. This Court concludes, however, that this case turns instead on the validity and terms of the subsequently-executed SA. Although Plaintiffs explicitly state that "[their] claims…do not arise from the execution of a Severance Agreement," Defendants contend that the SA is the controlling document, and that under the SA, Plaintiffs were not entitled to severance benefits unless they were recalled from layoff.

Plaintiffs do not address this argument in their memorandum opposing the Union's summary judgment motion. In their memorandum opposing Graham's summary judgment motion, they generally assert that "case law shows that [Graham's] focus on the October 3, 2013 'new' severance agreement does not foreclose its legal obligations under Article 23 of the CBA." Plaintiffs cite *Zakulski v. Bethlehem Steel Corp.*, No. CIV-87-173E, 1989 WL 118743, at *5-7

6

(W.D.N.Y. Oct. 4, 1989), *rev'd in part on reconsideration*, 1990 WL 82354 (W.D.N.Y. June 13, 1990), in support of their proposition. In *Zakulski*, the Court found that a "Memorandum of Agreement" did not modify a benefit provided to the plaintiff in the existing collective bargaining agreement. This Court is unpersuaded by *Zakulski*, however, because, among other reasons, it is not clear that the SA in the instant case is closely analogous to the Memorandum of Agreement in *Zakulski*, and *Zakulski* did not cite relevant authority in reaching its finding.

This Court concludes that, even if Plaintiffs had been entitled to severance pay under Article 23 of the CBA, the SA was the controlling document at the time of the plant closure. Where a union and an employer have executed two collective bargaining agreements which cover the same subject matter, the latter agreement supersedes the former. *See GCIU Emp'r Ret. Fund v. Chi. Tribune Co.*, 66 F.3d 862, 866-67 (7th Cir. 1995) (finding later collective bargaining agreement, which dealt with the same parties and subject matter, superseded earlier pension subscription agreement) (citing *Decca Records, Inc., v. Republic Recording Co.*, 235 F.2d 360, 363 (6th Cir. 1956)); *Ottawa Office Integration Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001) ("It is a well settled principle of contract law that a new agreement between the same parties on the same subject matter supercedes the old agreement") (citing *NLRB v. Int'l Union of Operating Eng'rs*, 323 F.2d 545, 548 (9th Cir.1963)); *Marine Transp. Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 696 F. Supp. 1, 17 (S.D.N.Y. 1988) ("Where two collective bargaining agreements are executed by the same parties and cover the same subject matter, the latter supercedes the former only as to inconsistent provisions in the two"; collecting cases), *aff'd*, 878 F.2d 41 (2d Cir. 1989).

In accordance with Article 25 of the CBA, the SA effectively amended the CBA's provision regarding severance pay in the event of a plant closure. The SA complied with the

CBA's requirement that modifications be made in writing, and the SA covered the same subject matter discussed in Article 23 of the CBA. Pursuant to the language of the SA, as well and the parties' manifest intent (as described by Ballesteros, who was present during the negotiations), employees on lay off as of October 3, 2013 were not entitled to severance pay unless they were recalled.

This Court discerns no reason not to enforce the SA, nor have Plaintiffs provided one. Therefore, this Court finds that Plaintiffs have failed to raise a genuine dispute regarding whether Graham breached the collective bargaining agreement in effect at the time of the plant closure-- the SA. In view of this conclusion, Plaintiffs' Section 301 claim fails, and summary judgment in favor of both Defendants is proper.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant District 9, International Association of Machinists and Aerospace Workers's Motion for Summary Judgment (ECF No. 50) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Graham Packaging Company L.P.'s Motion for Summary Judgment (ECF No. 55) is **GRANTED**. A separate judgment will accompany this Memorandum and Order.

Dated this 10th day of August, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE